IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM CURTIS, | : | CIVIL ACTION |
| **Plaintiff** | : | |
| | : | |
| vs. | : | NO. 14-0786 |
| | : | |
| JOHN WETZEL, et al., | : | |
| **Defendants** | : | |

## M E M O R A N D U M

**STENGEL, J.**                                                                    **March  29, 2017**

William Curtis, a state prisoner housed at the State Correctional Institution --
Graterford, is currently serving a life sentence without the possibility of parole after being
convicted of murder in 1982.  Mr. Curtis brought this action against fourteen defendants
under 42 U.S.C. § 1983, alleging violations of his constitutional rights by retaliating
against him for refusing to sign a Sex Offender Treatment Plan form.  Five of the
defendants were dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil
Procedure.  See Curtis vs. Wetzel, et al., 14-cv-0786, 2015 U.S. Dist. LEXIS 115149
(E.D. Pa. August 28, 2015).  Two of the defendants were never served with the
complaint, and thus are also dismissed.  The remaining seven defendants have filed a
motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil
Procedure.  Mr. Curtis has filed a cross-motion for summary judgment.  For the following
reasons, I will grant the motion of the defendants, and deny the motion of the plaintiff.

## I. BACKGROUND

The record reflects that on October 7, 1977, Mr. Curtis was found guilty of aggravated indecent assault.[1] See Document #99-2 at 11.  In 1982, he was convicted of first degree murder and is currently serving a life sentence at Graterford.  In April 2007, after being found guilty of a misconduct for engaging in sexual acts with others or sodomy, Mr. Curtis was placed in disciplinary custody in the restricted housing unit at Graterford.  After completing his stay in disciplinary custody, he remained in the restricted housing unit in administrative custody until February 2012.

On February 1, 2012, Mr. Curtis met with Defendants Jay Lane,[2] Francis Feilds,[3] Gary Olinger,[4] T. Bolton,[5] and Gerard Kelly[6] when he was informed that if he signed a tracking agreement he would be released from the restricted housing unit and placed in the general prison population.  Mr. Curtis signed the agreement and on February 2, 2012, was released to the general prison population.

A few days later, Mr. Curtis received a pass to report to an area known as J-Treatment Area, where he was questioned by Defendant Brannen[7] about the reason Mr. Curtis was incarcerated.  During the review of Mr. Curtis' file, Ms. Brannen saw that Mr. Curtis had been charged with aggravated indecent assault and the disposition of the

---

[1]  In Pennsylvania, aggravated indecent assault is a felony and is considered a sex crime.
[2]  Defendant Lane is the Deputy Superintendent of Facilities Management at Graterford.  See Compl. ¶ 8.
[3]  Defendant Feilds is the Major of the Unit Managers at Graterford.  See Compl. ¶ 9.
[4]  Defendant Olinger is the Corrections Classification and Programs Manager at Graterford.  See Compl. ¶ 10.
[5]  Defendant Bolton is the Unit Manager of J-Housing Unit and the Restricted Housing Unit at Graterford.  See Compl. ¶ 11.
[6]  Defendant Kelly is the Counselor for J-Housing Unit at Graterford.  See Compl. ¶ 13.
[7]  Defendant Brannen is a Mental Health Facilitator at Graterford.  See Compl. ¶ 15.

charge was guilty.  Ms. Brannen also learned that Mr. Curtis was found guilty of

violating the prison rules by engaging in sexual acts with others or sodomy.  Based upon

this information, Ms. Brannen made the assessment that Mr. Curtis was in need of the

high intensity sex offender program.

During the meeting, Ms. Brannen informed Mr. Curtis that he was a convicted sex

offender and was being evaluated for placement in the sex offender program.  Mr. Curtis

immediately responded that he had never pleaded guilty or been convicted of a sexual

offense.  Ms. Brannen informed Mr. Curtis that she recommended him for the high

intensity sex offender program and that if he did not participate he would be returned to

the restricted housing unit.

On March 20, 2012, Mr. Curtis was given a pass to report to the treatment area to

meet with Defendant Birmingham.[8]  Ms. Birmingham directed Mr. Curtis to go to a room

that resembled a classroom, which contained about twenty-five other inmates.  Ms.

Birmingham wrote "SOP" [Sex Offender Program] on the board and handed a

confidentiality form to each one in the class to sign including Mr. Curtis.  By signing the

form, an inmate pledges that he would not do any further criminal acts.  Mr. Curtis signed

the form but also wrote on the form, "This is coercion.  I was told that I'd be locked

down if I did not agree to participate."  He was instructed that if he did not properly sign

the form he would be sent back to the restricted housing unit.  Mr. Curtis refused to sign

the form and returned to the block.

---

[8] Defendant Birmingham is a Mental Health Facilitator at Graterford.  See Compl. ¶ 16.

On March 23, 2012, Mr. Curtis met with Defendants Kelly, Bolton, and Stewart. During the meeting, Mr. Kelly informed Mr. Curtis that he needed to comply with the sex offender program including completing the paper work properly or he would be returned to the restricted housing unit.

On March 29, 2012, Mr. Curtis was given another pass to the J-Treatment area to meet with Ms. Birmingham. Mr. Curtis went as directed and met with Ms. Birmingham who provided him with a form that he believes acknowledges that he had committed a criminal sexual act. Ms. Birmingham wanted Mr. Curtis to sign the form, but he refused and returned to his cell. He was then summoned to the unit manager's office where he met Mr. Kelly, Mr. Regan, a Sergeant, and Mr. Whitfield. Ms. Birmingham joined the meeting and asked Mr. Curtis several questions. She asked Mr. Curtis again to sign the form which indicated he was convicted of a sexual offense. He refused to sign, left the meeting, and returned to his cell.

Later that day, Mr. Kelly issued a misconduct report to Mr. Curtis for refusing to sign a document stating he had committed criminal sexual acts. On March 30, 2012, Mr. Regan issued Mr. Curtis an "Other's Report" stating "Inmate is a danger to some other person in the institution who cannot be protected by alternate means." Mr. Curtis was removed from the general prison population and placed in the restricted housing unit in administrative custody, where he remains today.

After Mr. Curtis filed this action, Ms. Brannen learned that the information the prison had received was incorrect, and that Mr. Curtis did not have a conviction for aggravated indecent assault. Thereafter, Mr. Curtis received notice that there would be a

4

hearing to determine if he needed the sex offender program.  The hearing took place on

August 6, 2015, but Mr. Curtis refused to attend.  <u>See</u> Document #99-3 at 4-5, 8.  On

January 25, 2016, the hearing examiner issued her decision and made several findings of

fact and conclusions of law.  For example, the examiner found:

> 5.     On March 29, 2007, following an investigation at SCI-Graterford, [Mr. Curtis] received Misconduct Report No. A514342, alleging that on March 3, 2007, [Mr. Curtis] assaulted another inmate by pulling the other inmate off of the top bunk, throwing the other inmate onto the bottom bunk and holding the other inmate down, pulling down the other inmate's pants and underwear, and inserting his penis into the other inmate's rectum.
>
> 6.     Based on the allegations in Misconduct Report No. A514342, [Mr. Curtis] was charged within the Department with assault, threatening another person, engaging in sexual acts or sodomy, and presence in a non-authorized area.

<u>See</u> Document #99-3 at 8 (citations omitted).  The examiner also found that, after a

hearing on the misconduct report, Mr. Curtis was found guilty of all charges and received

a sanction of 360 days in disciplinary custody.  <u>Id.</u> at 9.  The misconduct was upheld at

all levels of appeal.

The hearing examiner further found that the misconduct report supported the

department's recommendation that Mr. Curtis should participate in the sex offender

program because the sexual misconduct was officially sanctioned through the Hearing

Examiner process, there was an identifiable victim, and there was an event involving

sexual victimization.  <u>Id.</u>  The examiner concluded as a matter of law that the Department

was warranted in classifying Mr. Curtis as a sexual offender and in requiring his

participation in the Department's sex offender program.  <u>Id.</u> at 13.

## II.  LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  A factual dispute is "material" only if it might affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  For an issue to be "genuine," a reasonable fact-finder must be able to return a verdict in favor of the non-moving party.  Id.

A party seeking summary judgment initially bears responsibility for informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing relevant portions of the record, including depositions, documents, affidavits, or declarations, or showing that the materials cited do not establish the absence or presence of a genuine dispute, or showing that an adverse party cannot produce admissible evidence to support the fact.  FED. R. CIV. P. 56(c).  Summary judgment is therefore appropriate when the non-moving party fails to rebut the moving party's argument that there is no genuine issue of fact by pointing to evidence that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322.

Under Rule 56 of the Federal Rules of Civil Procedure, the court must draw "all justifiable inferences" in favor of the non-moving party.  Anderson, 477 U.S. at 255.  The court must decide "not whether . . . the evidence unmistakably favors one side or the

6

other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." Id. at 252.

## III. DISCUSSION

### A. Count One – First Amendment

Mr. Curtis claims in Count One of the complaint that the defendants violated his First Amendment rights when they removed him from the general prison population and placed him in the restricted housing unit for refusing to sign the form and claiming that he was not convicted of a sex crime.  A prisoner claiming that a defendant retaliated against him for exercising his constitutional rights must prove that: (1) his conduct was constitutionally protected; (2) he suffered adverse action at the hands of the defendant; and (3) his constitutionally protected conduct was a substantial or motivating factor in the decision of the defendant.  Carter v. McGrady, 292 F.3d 152, 158 (3d Cir. 2002).  Once a prisoner has made his *prima facie* case, the burden shifts to the defendant to prove by a preponderance of the evidence that he would have made the same decision absent the protected conduct for reasons reasonably related to penological interest.  Id. (quoting Rauser v. Horn, 241 F.3d 330, 334 (3d Cir. 2001)).

As a general rule, a prisoner's First Amendment rights are retained to the extent they are not inconsistent with his inmate status or with the legitimate penological objectives of the corrections system.  Pell v. Procunier, 417 U.S. 817, 822 (1974); see also Jones v. North Carolina Dep't of Corr., 433 U.S. 119, 132 (1977) (holding that a prisoner's exercise of his First Amendment freedoms may be curtailed if such speech poses the likelihood of disruption to prison order or stability, or otherwise interferes with

the legitimate penological objectives of the prison environment).  "Thus, an inmate's First Amendment rights do not include the right to debate staff orders prior to obeying them, disregard prison rules, or engage in activities that may incite a disturbance." Parran v. Wetzel, 2016 U.S. Dist. LEXIS 37340, *16 (M.D. Pa. Mar. 23, 2016).

Here, Mr. Curtis did not engage in protected activity when he refused to sign the sex offender program form.  The First Amendment protects truthful speech on matters of public concern.  Bartnicki v. Vopper, 532 U.S. 514, 533-34 (2001).  To form the basis for a retaliation claim in the prison context, the retaliation must operate to "deter public comment on a specific issue of public importance."  Crawford-El v. Britton, 523 U.S. 574 (1998).  Thus, to receive constitutional protection from retaliation, Mr. Curtis's speech must be on a substantial matter of public, or at least prison-wide, concern.  See Wesley v. Hollis, 2007 U.S. Dist. LEXIS 41562 (citing McElroy v. Lopac, 403 F.3d 855, 858 (7th Cir. 2005) (inmate's inquiry about pay for lost job was not a matter of public concern, and thus not protected).  Mr. Curtis's speech was not a matter of public concern.  It was personal to him.  Accordingly, Mr. Curtis did not engage in protected speech when he refused to sign the sex offender program form and declared that he was not convicted of a sex crime.  As such, he cannot establish a First Amendment claim as a matter of law.  I will enter judgment on the defendants' behalf and against the plaintiff on Count One of the complaint.

## B.  Count Three – Due Process under the Fourteenth Amendment

In Count Three, Mr. Curtis claims that because he was never convicted of a sex crime, the defendants violated his due process rights under the Fourteenth Amendment

when they labeled him a sex offender and required him to participate in the sex offender program without a hearing.  The defendants argue that they are entitled to qualified immunity.  I agree.

The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  Qualified immunity serves the dual purpose of holding government officials accountable when their power is exercised unreasonably and protecting those officials from "harassment, distraction, and liability when they perform their duties reasonably." Id.  Qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact. Id. (quoting Groh v. Ramirez, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting)).

Here, at the time Ms. Brannen recommended Mr. Curtis for the sex offender program, the records available to her and to all the defendants indicated that Mr. Curtis had a conviction for aggravated indecent assault and was placed on probation for a significant time.  In Pennsylvania, the crime of aggravated indecent assault is a sex crime. See 18 Pa. C.S.A. § 3125.  Because the prison records showed Mr. Curtis was guilty of a sex crime, Pennsylvania law required him to participate in the sex offender program.  See 42 Pa. Cons. Stat. § 9718; see also Renchenski v. Williams, 622 F.3d 315, 329 (3d Cir. 2010) (Any inmate of Pennsylvania's Department of Corrections who has never been charged with, or convicted of, a sex offense is entitled to due process before the

Department classifies him as a sex offender and requires him to undergo sex offender treatment). Therefore, it was unnecessary for the defendants to conduct a due process hearing as required by <u>Renchenski</u> before they "labeled" Mr. Curtis a sex offender and required him to attend the sex offender program. Based upon the fact that his records indicated that Mr. Curtis was convicted of a sex crime, the defendants could reasonably believe they were not violating clearly established law when they required Mr. Curtis to participate in the sex offender program or return to the restricted housing unit without violating clearly established law. Accordingly, I find that the defendants are entitled to qualified immunity on Count Three of the complaint. I will enter judgment on behalf of the defendants and against the plaintiff.[9]

Moreover, during the relevant period in this action, the law was not clearly established that an inmate refusing to sign a sex offender program form and stating that he is not a sex offender was constitutionally protected speech under the First Amendment. And, the defendants were under the belief that Mr. Curtis was a convicted sex offender, and pursuant to Pennsylvania law, was required to attend a sex offender program. The defendants, therefore, could reasonably believe that they were not violating clearly established First Amendment law when they sent Mr. Curtis back to the

_____

[9] In his cross-motion for summary judgment, Mr. Curtis seeks judgment on an Eighth Amendment claim which is not part of the original action. The claim apparently stems from March 2014, after the filing of this action, when the defendants moved a feebleminded inmate into a cell next to him as a tool against him. Mr. Curtis claims that the inmate made loud and incessant derogatory comments about him. On January 2, 2015, the inmate allegedly threw body fluids through the cell door at Mr. Curtis and the corrections officer as Mr. Curtis was being escorted back from the shower. Because this claim is not properly before me, I will not address its merits.

restricted housing unit after his refusing to sign the form.  Thus, the defendants are also entitled to qualified immunity on Mr. Curtis's First Amendment claim in Count One.

### C.  State Law Claims

Mr. Curtis claims that the defendants' actions violated several provisions of Pennsylvania Administrative Code and Pennsylvania state law.  I must agree with the defendants that these claims are barred by sovereign immunity.

Sovereign immunity bars claims that are asserted against the Commonwealth, its agencies, and Commonwealth employees acting within the scope of their office or employment.  See Mitchell v. Luckenbill, 680 F.Supp.2d 672, 681-82 (M.D. Pa. 2010) (citing 1 Pa. Cons. Stat. Ann. § 2310.)  The Pennsylvania General Assembly, after the judicial abolition of sovereign immunity by the Pennsylvania Supreme Court in Mayle v. Pa. Dep't of Highways, 388 A.2d 709 (Pa. 1978), reaffirmed by statute the concept of immunity for the Commonwealth and its employees.  The statute provides:

> Pursuant to Section 11 of Article 1 of the Constitution of Pennsylvania, it is hereby declared to be the intent of the General Assembly that the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity. When the General Assembly specifically waives sovereign immunity, a claim against the Commonwealth and its officials and employees shall be brought only in such manner and in such courts and in such cases as directed by the provisions of Title 42 (relating to judiciary and judicial procedure) or 62 (relating to procurement) unless otherwise specifically authorized by statute.

1 Pa. Cons. Stat. Ann. § 2310.

11

The Pennsylvania General Assembly has provided nine specific exceptions to the general grant of immunity: (1) the operation of a motor vehicle in the control or possession of a Commonwealth party; (2) health care employees; (3) care, custody or control of personal property; (4) Commonwealth-owned property; (5) potholes or other dangerous conditions; (6) care, custody or control of animals; (7) liquor store sales; (8) National Guard activities; and (9) toxoids and vaccines.  See 42 Pa. Cons. Stat. Ann. § 8522.  None of the state law claims in Mr. Curtis's complaint falls into any of the categories in which the Commonwealth has waived sovereign immunity.  Accordingly, I find that sovereign immunity bars Counts Four, Five, and Six of the complaint, and will enter judgment in favor of the remaining defendants and against the plaintiff on those counts.

An appropriate Order follows.