IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM CURTIS, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | No. 14-786 |
| v. | : | |
| | : | |
| JOHN WETZEL, et al., | : | |
| Defendants. | : | |

**MEMORANDUM**

**Schiller, J.**                                                                                                                             **June 12, 2023**

William Curtis was convicted of murder and is serving a life sentence without possibility of parole. He is currently housed at SCI Coal Township. His Complaint alleges Defendants, fourteen Pennsylvania Department of Corrections ("DOC") employees and officials, retaliated against him in violation of his constitutional rights and various state laws in 2012 while he was an inmate at SCI Graterford by placing him in the Restricted Housing Unit for his refusal to sign a form required to receive sex offender treatment. He seeks monetary damages and equitable relief in the form of release into the general population and the removal of any references to him as a sex offender in DOC records.

After remand from the Third Circuit[1], Defendants move for summary judgment with respect to Curtis' individual capacity claims against former Secretary of Corrections John Wetzel and former Deputy Secretary Michael Klopotoski. (ECF 194.) Defendants also seek to dismiss Curtis' official capacity claims against the Secretary of Corrections and the Deputy Secretary of

---

[1]     This matter was remanded after the retirement of Chief Judge Lawrence F. Stengel, to whom it was originally assigned. It was reassigned to the Court's docket in April 2019. (ECF 135.)

the Eastern Region as moot or, in the alternative, seek summary judgment in their favor.[2] (*Id.*) In addition, Defendants Jessica Birmingham, Thomas Bolton, Andrea Brannen, Gerald Kelly, Jay Lane, Gary Olinger, and Frank Regan move to dismiss as moot all of Curtis' official capacity claims against them.[3] (*Id.*) For the following reasons, the Court grants Defendants' motion.

I.  BACKGROUND

   A.  Facts

      1.  **Curtis was placed in restricted housing.**

Since his murder conviction in 1982, Curtis has been housed at several different Pennsylvania correctional facilities. (Def.'s Ex. 2B, ECF 99-2 at 6-11; *see also* Curtis Dep., Defs.' Ex. 1, ECF 99-1 at 7:19-8:10.) At all times relevant to his claims in this action, Curtis was confined at SCI Graterford. (Compl., ECF 1, ¶ 18.)

Curtis was placed on the DOC's Restricted Release List and placed in Administrative Custody in March or April 2007. (Gerard Kelly Decl., Defs.' Ex. 4, ECF 99-4 at ¶¶ 3-4.) That year,

---

[2] When Curtis initiated this lawsuit in 2014, John Wetzel was the Secretary of Corrections and Michael Klopotoski was Deputy Secretary of Corrections for the Eastern Region. Both have since retired. When Defendants filed their now-pending Motion to Dismiss and for Summary Judgment (ECF 194), George Little was the Acting Deputy Secretary of Corrections. Dr. Laurel R. Harry is now the DOC's Acting Secretary. She is automatically substituted as the relevant defendant for purposes of Curtis' official capacity claims against the Secretary of Corrections under Federal Rule of Civil Procedure 25(d). Current Deputy Secretary of the Eastern Region Tammy Ferguson is automatically substituted as the relevant defendant for purposes of Curtis' official capacity claims against the Deputy Secretary pursuant to Rule 25(d).

[3] The Court liberally construes Plaintiff's Motion for Summary Judgment (ECF 210), as Curtis' Response to the Commonwealth Defendants' Motion to Dismiss and Motion for Summary Judgment (ECF 194). Curtis filed his "Motion" on September 14, 2022, after the Court directed him to respond to Defendant's motion by September 12, 2022. (*See* ECF 206.) And although Curtis' filing is styled as a motion seeking affirmative relief, it opposes Defendants' arguments, rather than presenting the Court with new ones. The Court also considers the exhibits attached to ECF 105, 111, 192, 193, 199, 200, 201, 207, and 211 as exhibits to his response. (*See* ECF 196, 202, 206.)

he was also sanctioned for two misconduct reports: (1) Report No. A514342 for "engaging in sexual acts with others or sodomy" and presence in an unauthorized area, and (2) Report No. A514344 for assault and presence in an unauthorized area. (Def.'s Exs. 6B and 6C, ECF 143-5.) With respect to the first, a hearing examiner determined four confidential informants were "established as reliable" and "more credible" than Curtis (ECF 143-5 at ECF p. 4), notwithstanding Curtis' categorical denial of "any/and all of the horrendous acts stated on th[e] misconduct." (*Id.* at ECF p. 8.) Curtis was sanctioned with 360 days of disciplinary custody for the first report and to 180 days of disciplinary custody for the second. (*Id.* at ECF p. 5, 12.) A January 2011 Commonwealth of Pennsylvania "Initial Classification Summary" reported Curtis had been placed on the Restricted Release List due to his history of "exerting a negative influence in facility activities by repeatedly threatening staff members, refusing orders" and "sexually predatory behavior." (Defs.' Ex. 4, ECF 99-2 at ECF p. 14.) Curtis remained in Administrative Custody on the Restricted Release List in the Restricted Housing Unit (Level 5) until February 2012. (Defs.' Ex. 1, ECF 99-1 at 13:14-18; Defs.' Ex. 4, ECF 99-4, at ¶ 12.)

        2.    **Curtis was removed from restricted housing to receive Sex Offender Programming.**

Efforts began to remove Curtis from the Restricted Release List in December 2011 after he was assigned to Corrections Counselor Gerard Kelly's caseload. (Gerard Kelly Decl., Defs.' Ex. 4, ECF 99-4, at ¶¶ 6, 9.) Kelly reviewed Curtis' file and saw Curtis "had a conviction for a sex crime"[4] and had received a misconduct for sexually assaulting inmates. (*Id.* ¶ 7.) Kelly concluded Curtis required "treatment for his sexual behavior in prison and his assaultive nature." (*Id.*) Treatment would only have been available to Curtis in the "general population prison at

---

[4] Regrettably, the information Curtis' file contained about this "conviction" was later determined to be erroneous.

3

Graterford," necessitating his removal from the Restricted Release List and release from the Restricted Housing Unit. (*Id.* ¶ 8.) Kelly received approval for Curtis' return to the general population by the end of December. (*Id.* ¶ 10.) However, Curtis' general population placement was conditioned on his participation in Sex Offender Programming and "contingent on [Curtis'] "acceptance" of Sex Offender Programming. (*Id.* ¶ 11; Defs.' Ex. 4A, ECF 99-4 at ECF p. 7.) When DOC staff voted to approve Curtis' removal from the Restricted Release List, they did so based on the recommendation that he "be placed on the Institutional Predator list" and "remain in closer supervision [sic] in order to adjust appropriately and not present a danger to inmates for the remainder of his incarceration . . . ." (Defs.' Ex. 4A, ECF 99-4 at ECF p. 7.) In conjunction with their decision, voting staff noted Curtis would "need[ ] to comply with [sex offender] evaluation and recommendations," could "not refuse treatment" and "must be placed on tracking," and explained "any violation w[ould] result in return to [Restricted Housing Unit]." (*Id.* at ECF p. 8.)

### 3. Curtis was removed from and then returned to restricted housing.

Curtis was removed from the Restricted Release List in February 2012, signed a "tracking agreement," and transferred to the general population. (Gerard Kelly Decl., Defs.' Ex. 4, ECF 99-4, ¶ 12; Curtis Dep., Defs.' Ex. 1, ECF 99-1 at 14:16-15:20.) DOC Psychological Services Specialist Andrea Brannen then evaluated and interviewed him for Sex Offender Programming placement. (Andrea Brannen Decl., Defs.' Ex. 2, ECF 99-2, at ¶ 3.) To prepare for his evaluation, she reviewed his institutional file, which reported his 2007 misconduct for engaging in sexual acts or sodomy. (*Id.* ¶¶ 4-7.) Curtis' file also included an "Integrated Case Summary—Initial Classification Summary" which stated that he had been charged with and found guilty of Aggravated Indecent Assault, which Brannen correctly understood to be a felony sex crime in Pennsylvania. (*Id.* ¶¶ 8-10.) *See* 18 Pa. C.S. § 3125. Based on Brannen's file review, she

recommended that Curtis participate in High Intensity Sex Offender Programming. (Defs.' Ex. 2, ECF 99-2, at ¶ 11.) Curtis, however, denied he had ever been convicted of a sex crime and asserted he had been wrongly accused of sexual misconduct in 2007. (Defs.' Ex. 2, ECF 99-2, at ¶ 12; Defs.' Ex. 1, ECF 99-1, at 16:3-17:22.)

To participate in the cognitive behavior-based Sex Offender Programming, inmates are required to accept responsibility for their sexual misbehavior. (Defs.' Ex. 3, ECF 99-3 at ECF p. 11, ¶¶ 25-28; Defs.' Ex. 5, ECF 143-1, ¶ 10.) Curtis was asked to sign a "Limits of Confidentiality" Agreement acknowledging he was participating in treatment "to reduce the risk that [he] might re-offend" and permitting his treatment team to "report to the proper authorities any occurrence or potential occurrence of behaviors or intentions that constitute a risk to myself or others." (Defs.' Ex. 9, ECF 143-8.) On March 22, 2012, Curtis signed the form, but did so under a handwritten note stating that "[T]his is coercion. I was told I'd be locked down if I did not agree to participate." (*Id.*) Curtis testified it was his belief that by signing the paper, he "would have made a false material statement that [he] had been convicted of a sexual criminal act, because [he] never pled guilty to or never was found guilty of a sexual act." (Defs.' Ex. 1 at 21:25-22:6.) After that, Curtis refused to sign the "Limits of Confidentiality" Agreement again on more than one occasion. (*Id.* at 23:21-24:18.) Kelly explained that Curtis would not participate in Sex Offender Programming even though he was told that if he did not attend the programming, he would be returned to the Restricted Release List and the Restricted Housing Unit. (Defs.' Ex. 4, ECF 99-4, at ¶ 18.) Kelly issued Curtis a misconduct for his refusal to participate in Sex Offender Programming. (Defs.' Ex. 1 at 29:8-13.) Thereafter, Curtis was returned to the Restricted Housing Unit and remained in Administrative Custody at Graterford. (*Id.* at 30:9-25.) Kelly explained this was because Curtis was "a danger to others in the institution." (Defs.' Ex. 4, ECF 99-4, at ¶ 19; *see also* Defs.' Ex.

5

5C, ECF 143-2 at ECF p. 3.)

### 4. Curtis had a *Renchenski* hearing after SCI Graterford learned he had not been convicted of aggravated indecent assault.

After Curtis filed this lawsuit, Brannen learned the information in Curtis' "Integrated Case Summary" relating to his criminal conviction was inaccurate. (Defs.' Ex. 2, ECF 99-2 at ¶ 27.) In fact, Curtis did not have a conviction for aggravated indecent assault and his file regrettably included erroneous information. (*Id.*) Thereafter, in an effort to remedy the impact of the DOC's flawed records, then-Secretary of Corrections John Wetzel appointed an independent hearing officer to evaluate whether, without the erroneous conviction, there was just cause to classify Curtis as a sex offender in accordance with the procedure required in *Renchenski v. Williams*, 622 F.3d 315, 335 (3d Cir. 2010).[5] (Defs.' Ex. 3, ECF 99-3 at ECF p. 4 and ECF p. 4 n.1.) Curtis received advance written notice of a hearing in August 2015 and provided written submissions to the hearing officer but declined to appear. (Defs.' Ex. 3, ECF 99-3 at ECF p. 4-5.)

The hearing examiner found the DOC presented "credible" evidence of just cause, explaining Curtis "did not avail himself of the opportunity to present evidence of record that might contradict any of the [DOC's] evidence" at the *Renchenski* hearing. (*Id.* at ECF p. 18.) She ultimately concluded that even though Curtis "was not criminally convicted of a sexual offense," his "history of inappropriate sexual behavior, including his sexual assault on another inmate, warrant[ed] classifying him as a sex offender and requiring him to participate in sex offender treatment programming." (*Id.* at ECF p. 17-19.) In support of her decision, she noted the DOC's "duty . . . to recommend sex offender treatment programming for those who are in need of

---

[5] In *Renchenski*, the Third Circuit held that "only after a prisoner has been afforded due process may sex offender conditions be imposed on an inmate who has not been convicted of a sexual offense." 622 F.3d at 326.

rehabilitation and . . . to protect other inmates and Department staff from sexually predatory individuals . . . ." (*Id.* at ECF p. 18.)

### 5. Curtis eventually was transferred to a general population unit.

Following the hearing officer's decision, Curtis remained on the Restricted Release List in Administrative Custody, first at SCI-Graterford and then at its successor SCI-Phoenix, until May 2019, when then-Secretary Wetzel or the DOC's then-regional deputy secretary, Deputy Michael Wenerowicz, reviewed Curtis' Restricted-Release-List status and determined Curtis should participate in the DOC's PORTAL program at SCI-Pine Grove. (Defs.' Ex. 5, ECF 143-1 at ¶ 5.) PORTAL "provides a gateway for inmates to re-integrate into general population, while providing therapeutic programming, education, and socialization opportunities for inmates confined to a Level 5 setting for extended periods." (*Id.* ¶ 3.) Inmates in the PORTAL program are assigned to individual cells in Administrative Custody but are not in "solitary confinement." (*Id.* ¶ 4.) They meet with counselors, may interact with staff and inmates, and have out-of-cell activity opportunities. (*Id.*) Inmates who progress to PORTAL Phase III "are allowed out of their cells at least 20 hours per week with yard and day room recreation time together with another Phase III inmate." (*Id.*) In June 2019, the Program Review Committee promoted Curtis to Phase III of the PORTAL program. (*Id.* ¶ 12.) By December 2019, Curtis was transferred to Phase II of the PORTAL program, although he remained uninterested in Sex Offender Programming. (Defs.' Ex. 12, ECF 194-1 at ECF p. 173.) By June 2020, Curtis had completed the PORTAL Program's violence prevention component, but continued to refuse Sex Offender Programming based on his belief that he had been placed on the Restricted Release List because of four "make believe" confidential informants "giving untrue stories about him." (Defs.' Ex. 13, ECF 194-1 at ECF p. 178.) DOC staff voted to retain Curtis on the Restricted Release List because of his Sex Offender

7

Programming refusal and his "history of sexual predatory behaviors." (*Id.* at ECF p. 178-79.) When the DOC Program Review Committee reviewed Curtis' status in November 2020, it recommended maintaining his status on the Restricted Release List in Administrative Custody. (Defs.' Ex. 14, ECF 194-1 at ECF p. 176.) By October 2021, Curtis had been relocated to SCI-Greene and was transferred to SCI-Coal Township. (Wheary Decl., Defs.' Ex. 16, ¶ 3, ECF 194-1 at ECF p. 178.) In November 2021, Curtis moved to SCI-Coal Township's J-Block: "a general population unit with all standard general population privileges." (*Id.* ¶¶ 4-5.)

B.     **Procedural history**

After Curtis filed his Complaint, Defendants Wetzel, Klopotozki, Wenerowicz, Lewis and Shaylor moved to dismiss Curtis's claims against them. Ruling on their motions in 2015, Judge Stengel held the Eleventh Amendment barred Curtis's official capacity claims against them. *Curtis v. Wetzel*, No. 14-786, 2015 WL 5115439, at *5 (E.D. Pa. Aug. 28, 2015). He held Curtis failed to allege sufficient facts to show their personal involvement in the alleged conduct, barring his First and Fourteenth Amendment claims against the five defendants in their individual capacities. *Id.* at *5-7. He also dismissed Curtis' Fifth Amendment claim, holding the consequences Curtis faced for his refusal to participate in Sex Offender Programming did "not rise to the level of compulsion which would compel a prisoner to expose himself to criminal liability." *Id.* at *7.

After discovery, Curtis and the remaining Defendants filed cross-motions for Summary Judgment. Judge Stengel granted summary judgment in the remaining Defendants favor with respect to Curtis' First Amendment retaliation claim because he "did not engage in protected activity when he refused to sign the sex offender program form." *Curtis v. Wetzel*, No. 14-786, 2017 WL 1163888, at *4 (E.D. Pa. Mar. 29, 2017). He held qualified immunity shielded the remaining Defendants from Curtis' First and Fourteenth Amendment claims because they "could

reasonably believe they were not violating clearly established law when they required Mr. Curtis to participate in the sex offender program or return to the restricted housing unit" when "his records indicated that Mr. Curtis was convicted of a sex crime." *Id.* at *4. He also granted summary judgment in the remaining Defendants' favor with respect to Curtis' state law claims, finding they were "barred by sovereign immunity." *Id.* at *5. Curtis appealed in April 2017 after Judge Stengel denied his timely motion under Federal Rule of Civil Procedure 60(b). (ECF 124; *see also* ECF 123.)

The Third Circuit affirmed the dismissal of all claims against Defendants Wenerowicz, Lewis and Shaylor based on their lack of personal involvement but found Curtis sufficiently alleged Wetzel's and Klopotowski's personal involvement and reversed their dismissal. *Curtis v. Wetzel*, 763 F. App'x 259, 263 (3d Cir. 2019). It affirmed Judge Stengel's determination that qualified immunity barred Curtis' First, Fifth and Fourteenth Amendment claims for monetary damages but held qualified immunity does not bar his First, Fifth and Fourteenth Amendment claims for declaratory and injunctive relief (i.e., his request to be released into the general population and the removal of any references to him as a sex offender in DOC records). *Id.* at 264. So, the Third Circuit vacated the District Court's "determination that the defendants' threats of solitary confinement did not rise to the level of compulsion for Fifth Amendment purposes," and its "judgment insofar as it rejected Curtis' First Amendment claim on the basis that his speech was personal, rather than a matter of public concern . . . ." *Id.* at 266. It directed the Court to consider on remand "whether labeling Curtis a sex offender and requiring that he attend Sex Offender Programming violated his First and Fourteenth Amendment rights" and whether Defendants' "threats to place Curtis in solitary confinement indefinitely rose to the level of compulsion" *if* Curtis' "requests for declaratory and injunctive relief are not moot . . . ." *Id.* at 264.

9

In June 2019, following remand, Curtis moved for the appointment of counsel. (ECF 142.) His case was referred to the Eastern District of Pennsylvania's Prisoner Civil Rights Panel (ECF 144), and a member of the prisoner panel was appointed to represent Curtis in August 2020. (ECF 171.) That attorney subsequently informed the Court that he was unable to proceed on Curtis' behalf, so the Court renewed the search for counsel from the Prisoner Civil Rights Panel. (ECF 175.) Curtis confirmed his desire to wait for counsel from the Prisoner Civil Rights Panel in March 2021. (ECF 177.) When no attorney had volunteered to accept appointment by January 2022, the Court informed Curtis that he would be required to represent himself on a going forward basis. (ECF 184.) Defendants filed the motion which is the subject of this Opinion in April 2022 (ECF 194). Curtis subsequently asked for two extensions of time to respond (ECF 195, 205), which the Court granted. (ECF 196, 206.) Consistent with footnote 3 above, the Court has considered Curtis's numerous responsive filings in reaching its decision today.

## II. STANDARD OF REVIEW

### A. Motion to dismiss

To withstand dismissal, Curtis' Complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see* Fed. R. Civ. P. 12(b)(6). A claim is facially plausible when the facts pled "allow[ ] the court to draw the reasonable inference that [a] defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

When a complaint includes well-pleaded factual allegations, the Court "should assume

their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679). However, this "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (quoting *Connelly*, 809 F.3d at 786-87).

B. **Summary judgment**

Summary judgment is proper if the movant proves that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288 (3d Cir. 2018). A fact is "material" if it may affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine dispute" exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* A mere scintilla of evidence supporting the nonmoving party, however, will not suffice. *Id.* at 252. Rather, the nonmovant must "set forth specific facts showing that there is a genuine issue for trial." *Id.* at 256.

At summary judgment, a court may consider any material in the record that may be admissible at trial. *See* Fed. R. Civ. P. 56(c); *Pamintuan v. Nanticoke Mem'l Hosp.*, 192 F.3d 378, 387-88 & n.13 (3d Cir. 1999). In doing so, a court "must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Prowel v. Wise Bus. Forms*, 579 F.3d 285, 286 (3d Cir. 2009). But it need not credit "[u]nsupported assertions, conclusory allegations, or mere suspicions." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010). Nor may a court make credibility determinations or weigh the evidence. *See Parkell v.*

*Danberg*, 833 F.3d 313, 323 (3d Cir. 2016).

## III. DISCUSSION

### A. Curtis' claims for equitable relief are moot.

Curtis' claims may only proceed if they are not moot. The Court "has neither the power to render advisory opinions nor to decide questions that cannot affect the rights of litigants in the case before" it. *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975) (citations and quotations omitted).

#### 1. Curtis' official capacity claims for equitable relief against Defendants Lane, Olinger, Bolton, Regan, Birmingham, Brannen, and Kelly are moot.

Curtis seeks equitable relief in the form of removal from the Restricted Release List and release to the general population. Defendants argue Curtis' official-capacity claims for equitable relief cannot proceed against Defendants Lane, Olinger, Bolton, Regan, Birmingham, Brannen, and Kelly because they were officials at SCI-Graterford and its successor institution SCI-Phoenix. Since the events alleged in Curtis' Complaint, he has been transferred to SCI-Coal Township. (*See* ECF 137.) SCI-Graterford's closure bars his future assignment there and Curtis has set forth no evidence to show "that he will ever be assigned again to SCI-Phoenix as his 'home' institution," instead, the Court "can only speculate" that this could happen. (Defs.' Mot., ECF 194 at 10.) Moreover, the Court can only speculate that any of these Defendants might endeavor to remove Curtis from the general population based on his failure to participate in Sex Offender Programming. Speculation is not enough. Curtis' transfer moots his requests for equitable relief as to these officials from SCI-Graterford/SCI-Phoenix. *See Griffin v. Beard*, 401 F. App'x 715, 716-17 (3d Cir. 2010) (holding inmate's claim for injunctive relief was mooted by his transfer from SCI-Huntingdon); *Fantauzzi v. Wetzel*, No. 18-5166, 2019 WL 4543095, at *12 (E.D. Pa. Sept. 18, 2019) (holding the plaintiff's claims for injunctive and declaratory relief were "moot—even if

they were potentially valid while incarcerated at SCI-Graterford—as he was no longer enduring the alleged conditions at SCI-Graterford" after his transfer). The Court dismisses these claims.

### 2. Curtis' official capacity claims for equitable relief against the Acting Secretary and Deputy Secretary of the DOC are moot.

Even though Curtis' transfer to SCI-Coal Township alone did not moot his official-capacity claims for equitable relief against the Acting Secretary and Deputy Secretary of the DOC, these claims likewise are moot. There is an exception to the mootness doctrine in "exceptional situations" for controversies that are "capable of repetition, yet evading review." *Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 170 (2016) (citation and internal quotation omitted). In theory, Curtis could be threatened with solitary confinement for not participating in Sex Offender Programming again. However, the mootness exception applies only when (1) the challenged action is too brief "to be fully litigated prior to cessation or expiration," and (2) it can be reasonably expected "that the same complaining party [will] be subject to the same action again." *Id.* Even if Curtis could show that the time during which he was placed on the Restricted Release List was too short to be fully litigated, there must still be some reasonable expectation that he would again be subject to placement on the Restricted Release List based on his refusal to participate in Sex Offender Programming. Nothing in the record suggests there is a reasonable expectation that he will be threatened again with indefinite solitary confinement within the Pennsylvania DOC for refusing to admit to engaging in sexual misconduct. Curtis was removed from the Restricted Release List in November 2021 after his transfer to the PORTAL program and released into the general population "with all standard general population privileges." (Wheary Decl., Defs.' Ex. 16, ECF 194-1 at ECF p. 178.) The mootness exception does not apply to permit Curtis' official-capacity claims for equitable relief against the Acting Secretary and Deputy Secretary of the DOC to proceed. The Court dismisses these claims as well.

B.  **Wetzel and Klopotoski are entitled to qualified immunity on Curtis's remaining claims.**

The Third Circuit affirmed that qualified immunity bars Curtis' First, Fifth, and Fourteenth Amendment damages claims against the Defendants other than Wetzel and Klopotoski. *Curtis*, 763 F. App'x at 264. Because Curtis' damages claims against Wetzel and Klopotoski were dismissed prior to summary judgment before his appeal, the Court has yet to determine whether the doctrine also shields Wetzel and Klopotoski from those claims. Since the Third Circuit vacated their dismissal, the Court considers that question now and finds that it does.

Qualified immunity is an affirmative defense that "shields officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Qualified immunity is generally a question of law that should be considered at the earliest possible stage of the proceedings, although a genuine dispute of material fact may preclude summary judgment on the defense. *See Giles v. Kearney*, 571 F.3d 318, 325-26 (3d Cir. 2009). "Whenever a district court denies a public official qualified immunity at summary judgment, the court must analyze separately, and state findings with respect to, the specific conduct of each defendant." *Dean v. Borough of Glassboro*, No. 21-2468, 2023 WL 2597586, at *3 (3d Cir. Mar. 22, 2023) (citation and internal quotation omitted). To assess whether qualified immunity exists, courts consider: (1) whether the facts "show the violation of a constitutional right, and (2) whether the law was clearly established at the time of the violation." *Kelly v. Borough of Carlisle*, 622 F.3d 248, 253 (3d Cir. 2010) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). "[Q]ualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Williams v. City of York*, 967 F.3d 252, 259 (3d Cir. 2020) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

The Third Circuit has already explained that the other Defendants "reasonably relied on

the DOC's records" when they required Curtis to participate in Sex Offender Programming and that Curtis "had not presented any evidence that the prison records were inaccurate." *Curtis*, 763 F. App'x at 264. Moreover, Curtis failed to "identif[y] any clearly established law that would have required prison officials to investigate his claims before requiring that he participate in [Sex Offender Programming]." *Id.*; *see also id.* at 265 ("As with his First and Fourteenth Amendment Claims, Curtis' Fifth Amendment claim fails on qualified immunity grounds to the extent that he sought damages.").

"Usually, the law of the case doctrine dictates that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case. *Mack v. Yost*, 63 F.4th 211, 231 (3d Cir. 2023) (citation and internal quotation omitted). Curtis has not shown any reason why the same qualified immunity analysis that barred his damages claims against the other Defendants should not apply to bar his damages claims against either former Secretary Wetzel or former Deputy Secretary Klopotoski. "A government official's conduct violates clearly established law when, at the time of the challenged conduct, every reasonable official would understand that what he is doing violates the right alleged." *Curtis*, 763 F. App'x at 263-64 (citation omitted). There is no record evidence sufficient to show any material question of fact exists as to whether either Wetzel or Klopotoski had any reason to understand they had an obligation to investigate beyond the information included in his Integrated Case Summary—Initial Classification Summary and to consider Curtis' original court records when Curtis was placed on the Restricted Release List for refusing to agree to participate in Sex Offender Programming. Wetzel and Klopotoski, like the other Defendants, are entitled to summary judgment in their favor on Curtis' claims for damages under the First, Fifth, and Fourteenth Amendments because the doctrine of qualified immunity bars the claims.

## IV. <u>CONCLUSION</u>

While the circumstance giving rise to Curtis' claims in this case—the DOC's inaccurate recordkeeping—is regrettable, it does not provide a basis for any relief. The Court grants Defendants' motion because Curtis' remaining claims for equitable relief are moot and his remaining claims for damages are barred by the doctrine of qualified immunity.

An Order consistent with this Memorandum will be docketed separately.